HAMMEL vs. QUEEN'S INSURANCE COMPANY OF LONDON AND LIVERPOOL.

*December 13, 1881 — January 10, 1882.*

INSURANCE AGAINST FIRE:  Forfeiture clauses construed.  *(1) "Levy of an execution" inapplicable to realty.  (2) "Alienation" or "change in title or possession," inapplicable to execution sale of realty.*

1. A provision in a fire-insurance policy that the "levy of an execution" on property insured shall terminate the risk, is applicable only to *personal* property, there being in practice no *levy* of an execution on real estate.
2. Such a policy provides for an immediate termination of the risk "if the property be sold or transferred, or any alienation or change take place in the title or possession, whether by legal process or judicial decree, or

voluntary transfer or conveyance." Under the laws of this state, the original owner of land, his heir or assignee, has full rights of possession, occupancy and use for fifteen months after the sale of the land on execution; for twelve months of that time he has an absolute right to redeem, and, on his failure to do so, other judgment creditors or mortgagees may redeem within the next three months; and the purchaser at execution sale can acquire, as such, neither title nor possession before the end of the fifteen months. *Held*, that an execution sale of realty is in itself no ground of forfeiture under the condition above recited.

APPEAL from the Circuit Court for *Outagamie* County.

Action upon a policy of insurance against fire. There was a special verdict, and cross motions for judgment thereon; and from a judgment in favor of the plaintiff the defendant appealed. The error assigned by the appellant will sufficiently appear from the opinion.

For the appellant there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber*. To the point that there was such an *alienation* of the property by the execution sale as worked a forfeiture of the policy under its expressed conditions, they cited Wood on Ins., § 325; *Tomlinson v. Ins. Co.*, 47 Me., 232; *Abbot v. Ins. Co.*, 30 id., 414; *Edmands v. Ins. Co.*, 1 Allen, 311; *Young v. Eagle Ins. Co.*, 14 Gray, 152; *Savage v. Howard Ins. Co.*, 52 N. Y., 502; *Perry v. Ins. Co.*, 61 id., 214; *Appleton Iron Co. v. Ins. Co.*, 46 Wis., 23.

For the respondent there was a brief by *Barnes & Goodland* and *Leopold Hammel*, and oral argument by *Mr. Barnes*.

TAYLOR, J. This is an action to recover upon an insurance policy against loss by fire. The respondent recovered in the court below, and the company appealed from the judgment. The only error assigned by the learned counsel for the appellant is, that it was shown upon the trial that after the policy was issued and before the loss, and without the knowledge of the company or its authorized agents, the real estate insured was sold upon an execution issued upon a judgment rendered

against the plaintiff. The sale upon the execution took place on the 26th day of July, 1879, and the loss occurred on the 11th day of November, 1879. The judgment upon which the execution was issued and sale made, was rendered and duly docketed on the 5th of June, 1878. The policy upon which this action is brought was issued on the 17th of May, 1879, and insured the property therein described for one year from the date of its issue.

It is claimed by the learned counsel for the appellant, that the sale of the real estate made by virtue of the execution issued upon said judgment rendered the policy void from the date of such sale, under the following condition in said policy: "This policy shall be void and immediately cease to be binding on the company, if the property be sold or transferred, or any alienation or change takes place in the title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance." Appended to the paragraph of conditions in which the condition above quoted is contained, there is this note: "The commencement of proceedings to foreclose a mortgage, or levy of execution, shall be deemed an alienation of the property, and the company shall not be holden for loss or damage thereafter."

The jury found that the agents of the company had knowledge of the litigation which resulted in the judgment and sale above mentioned, before the policy was issued. They also found that they had no knowledge of the fact that judgment had been obtained, or that an execution had been issued thereunder and a sale made, before the loss occurred.

The question to be determined is, whether a sale of real estate upon execution, which had not yet become perfected by deed, and on which sale the time for redemption by the judgment debtor had not yet expired when the loss occurred, was a breach of the condition above quoted. It is not contended by the learned counsel for the appellant that this case comes within the provisions of the note appended to the paragraph

as above stated, which makes "the levy of an execution" avoid the policy. This court, in the case of *Shafer v. Phœnix Ins. Co.*, 53 Wis., 361, following the decision in *Colt v. Ins. Co.*, 54 N. Y., 595, and other cases, held that the words "levy of an execution," in a policy of insurance, meant a levy upon personal property, for the reason that in practice there is no such thing as a levy of an execution upon real estate. All that is necessary to make a regular sale of real estate upon execution issued upon a judgment is to publish the notice of sale as required by the statute, and make the sale at the time mentioned in such published notice. No entry of a levy upon the execution is necessary to perfect such sale.

Whether a sale of real estate upon execution is a violation of the condition of the policy above quoted, depends very much upon the nature and effect of such sale under the laws of this state. Under our laws the sale of real estate upon execution does not give the purchaser any right to the possession of the property sold until fifteen months after such sale takes place. During that time the original owner has the same right of possession, occupancy and use of the premises sold that he had before the sale, and during the twelve months next after the sale he has the absolute right to avoid the effect of the sale by paying the sum bid upon such sale, with interest at the rate of ten per cent. If the original owner die during the twelve months, the title descends to his heirs-at-law as though he were the absolute owner, and such heirs succeed to his right to redeem. So, if he convey the lands during such time, his grantee becomes vested with the title, and may redeem from the sale. The right of the purchaser is conditional, not only upon the right of the owner to redeem within twelve months after the sale, but also upon the further condition that other judgment creditors and mortgagees may redeem at any time within three months after the expiration of the twelve months within which the owner has such right. At the end of the fifteen months the purchaser may, if no

redemption has been made, perfect the sale by demanding a conveyance from the officer who made it, or his successor in office; and when so clothed with the title, and not before, he may demand possession of the premises.

The purchaser has neither the title, possession nor right of possession until the time of redemption expires, and can maintain no action for any injury to the premises or the possession unless such injury amounts to such waste as would entitle a remainder-man to maintain an action pending the life or other estate upon the termination of which the estate in remainder vests.

Is a sale which only authorizes the vendee to demand a conveyance of the title at a future date, which right to so demand the title is subject to be defeated at any time before that date by the owner, his heirs, assigns or judgment creditors, upon payment of the purchase money and interest, and which leaves the right of possession and use in the original owner until such fixed date arrives, such a sale, transfer, alienation or change in the title or possession as is contemplated by the condition in the policy above quoted?

Keeping in mind the rule which governs the construction of all contracts, where the main purpose of the contract is sought to be avoided by the breach of a condition subsequent, which by its terms cuts off all inquiry into the question of its materiality or whether the party seeking to avail himself of the breach has been injured thereby, we are clearly of the opinion that such sale was not a breach of the condition. The rule is well settled that in the construction of such conditions, if the terms are of doubtful meaning, or are susceptible of two constructions, that meaning will be given to them which is most favorable to the rights of the party seeking to uphold the contract, and most strongly against the party who seeks to avoid it, unless such latter construction be clearly against the intent of the parties, as shown by the whole contract. The words "sold," "transferred," "alienation," and "change of title,"

have been ·frequently defined by the courts in insurance and other cases, and we think the great weight of authority is against the construction sought to be put upon them by the learned counsel for the appellant.

In the case of *Jackson v. Silvernail*, 15 Johns., 278, where a lessee covenanted *not to sell, dispose of or assign his estate in the demised premises* without the permission of his lessor, and the sale contained a clause of forfeiture for the non-performance of the covenants, it was held that a lease of a part of the premises for twenty years was not a breach of the covenant and did not work a forfeiture, and that nothing but an assignment of his whole estate by the lessee would work a forfeiture. A like decision was made in *Jackson v. Harrison*, 17 Johns., 66. In *Jackson ex dem. Schuyler v. Corliss*, 7 Johns., 531, and *Jackson v. Kipp*, 3 Wend., 230, in case of a covenant that on every *sale or assignment* the reversioner should have the right to demand one-fifth of the consideration money, it was held that there was no breach of such covenant when the sale was made upon execution in a *bona fide* adverse proceeding.

In *Strong v. Ins. Co.*, 10 Pick., 40, it was held that a condition in the policy, which provided "*that if the property should be sold or conveyed in whole or in part, the policy should be void,*" was not broken by a sale upon execution, and that the provision in the policy referred only to voluntary assignments. See also *Smith v. Putnam*, 3 Pick., 221; *Doe v. Carter*, 8 Term R., 57; *Stetson v. Ins. Co.*, 4 Mass., 330; *Franklin Ins. Co. v. Findley*, 6 Whart., 483; Wood on Ins., § 326; *Baley v. Ins. Co.*, 80 N. Y., 21; *Barlow v. Ins. Co.*, 63 N. Y., 399; *Commercial Ins. Co. v. Spankneble*, 52 Ill., 53; *Starkweather v. Ins. Co.*, 2 Abb. (U. S. C. C.), 67. These cases, and numerous others that might be cited, seem to settle the question that the condition prohibiting a sale, transfer or conveyance of the insured property is to be construed as limited to a voluntary transfer, and not to a sale or transfer made by adverse legal proceedings. In all these and similar cases

it is probable that if an adverse legal sale, transfer or convey-
ance of the insured property had been made previous to the
loss, so as to divest the insured of all right, title or interest
therein, no recovery could be had, for want of an insurable in-
terest in the policy-holder at the time of the loss. As this
case clearly shows that the sale upon execution did not divest
the insured of all title or interest in the insured property, nor
of the possession thereof, at the time of the loss, we might
rest the affirmance of the judgment of the court below upon
the ground that the conveyance, sale or alienation was not a
voluntary one, and did not, therefore, come within the provis-
ions of the condition, were it not for the words in the con-
dition, "whether by legal process or judicial decree or
voluntary transfer or conveyance;" but as it may be well
urged that these words reach back to the beginning of the
sentence, and give character to the words "sold or transferred,"
as well as to the words "alienation or change of title," we
must determine the other question, whether the sale on execu-
tion, unperfected, was a sale, transfer, alienation, or change of
title, within the meaning of the condition, admitting that the
words refer to an involuntary as well as a voluntary sale, etc.
We think all the decisions hold that these words mean such a
change of the title of the insured property as divests the in-
sured of the legal title, and gives the right of possession to
some other person than the insured. They do not cover an
executory contract for sale where the vendee does not by the
contract become entitled to the possession, nor to an incum-
brance of the estate by judgment, mechanic's lien, mortgage
or otherwise, where such incumbrance is not created by some
conveyance which gives the legal title to the incumbrancer.
It will be found that in all the cases cited by the learned coun-
sel for the appellant to sustain his position, there was an
alienation or change of title shown. They were cases where
there was, in fact, a transfer of the legal title before the loss.

In *Perry v. Lorillard Ins. Co.*, 61 N. Y., 214, the court

held that a condition similar in all respects to the one in this case was broken by an assignment in bankruptcy of the insured property before loss. The opinion is based upon the ground that the proceedings in bankruptcy transferred the legal title and possession from the insured to the assignee in bankruptcy, and although there might still remain in the insured an insurable interest, yet, there having been a transfer in law and in fact of the title and possession, the condition was broken.

In *Abbot v. Ins. Co.*, 30 Me., 414, it was held that a by-law of the company which prohibited the insured from *selling or alienating the property in whole or in part*, was broken by a sale of the property insured, although the insured upon such sale took back a mortgage for a part of the purchase money. Upon this sale the purchaser was let into possession, and he was in possession when the loss occurred.

In *Tomlinson v. Ins. Co.*, 47 Me., 232, where by the terms of the policy it was to be absolutely void "if the insured, *without the assent of the company, alienated the property in whole or in part,*" it was held that the insured having mortgaged the insured property after the policy issued, and, after making such mortgage, having transferred his equity of redemption to another person, from whom he took back a bond of defeasance, which was not recorded as required by law in order to convert such second transfer into a mortgage, avoided the policy. It does not appear in this case whether the insured remained in possession at the time of the loss or not.

In *Springfield F. & M. Ins. Co. v. Massasoit Ins. Co.*, 43 N. Y., 389, it was held that an absolute sale and transfer by the mortgagor of the insured premises, before the loss, avoided the policy, though the loss was made payable to a mortgagee of the insured property. In *Savage v. Ins. Co.*, 52 N. Y., 502, the policy contained the following condition: "*If the property be sold or transferred, or any change takes place in title or possession, whether by legal process or judicial de-*

*cree*, or voluntary transfer or conveyance." It was held that the policy was avoided by a sale and conveyance of the property by the assured before loss, although the purchaser gave back to the insured a mortgage for the greater part of the purchase money. The grantee and mortgagor was in possession when the loss occurred.

In all these cases it will be seen that there was an alienation or conveyance of the property itself; the title of the insured was changed and transferred to another, either by his own act or by operation of some legal process, judgment or decree; and in all but one the possession was also changed.

In *Orrell v. Fire Ins. Co.*, 13 Gray, 431, the policy contained the following condition: "*In case of any sale, transfer, or change of title in the property insured by this company, such insurance shall be void.*" Upon the trial the court instructed the jury as follows upon the question of forfeiture: "That to constitute an alienation it must be such as to pass the legal title as between the parties to it; that it need not be such a sale as would be valid as against the creditors of the plaintiff; that a mere agreement of the parties to represent to creditors that there had been such sale, to protect the property from attachment, when, in fact, nothing had been done by way of formal transfer of the property, would not constitute such alienation as would defeat the policy." This instruction was upheld by the supreme court.

In *Conover v. Ins. Co.*, 3 Denio, 254, it was held that under the statute creating the corporation, which provided that *when the property insured by the corporation should be alienated by sale, or otherwise*, the policy should be void, the giving of a mortgage upon the property insured after it was issued, and before loss, did not avoid the policy; that a mortgage was not an "alienation, by sale or otherwise," within the meaning of the charter.

There is an almost uniform line of decisions upon conditions similar to the one in the policy under consideration, which

hold that nothing short of a change of the legal title to the property insured will be a breach of the condition; and this has always been so held where the insured remains in possession, and has the right of possession when the loss occurs. Some cases have held that an executory sale and possession taken by the vendee before loss would avoid the policy. Where a policy contained the condition that "when any property insured in the company shall in any way be *alienated*, or where the title of any property insured shall be changed by sale, mortgage or otherwise, the policy shall be void," it was held that giving a mortgage upon the insured property was not a breach of the condition. *Shepherd v. Ins. Co.*, 38 N. H., 232; *Folsom v. Ins. Co.*, 30 N. H., 231; *Rollins v. Ins. Co.*, 25 N. H., 206.

In the case of *Shepherd v. Ins. Co.*, the court, in commenting on the construction which should be put upon the terms "when the title shall be changed by sale, mortgage," etc., say: "The title may be changed by a mortgage and foreclosure, but it is not either a vulgar or technical expression to speak of a change of title by the mere execution of a mortgage. In equity, and even at law, a mortgage is not regarded as a title to land. It is considered a lien, or incumbrance, which may transfer the title to the mortgagee; but the mortgagor is regarded as the owner until entry of the mortgagee or foreclosure. We may so readily imagine a great variety of forms of expression which would make a policy void if the property should be mortgaged, that it may be fairly inferred from the use of the phrase, 'when the title shall be changed,' that it was not designed to include a mere mortgage." These comments are quite applicable to the condition under consideration. It is admitted that suffering a judgment to be obtained against the insured, which would be a lien upon the real estate insured, would not be within the terms of the condition, and it seems to us equally clear that the giving of a mortgage would not; otherwise there would be no sense in the condition contained

in the note, viz., that "the commencement of proceedings to foreclose a mortgage shall be deemed an alienation." If it were intended that the mere giving of a mortgage on the insured premises should be a violation of the condition, there was no necessity of adding, by way of explanation, that the commencement of an action to foreclose the same should be deemed an alienation. This explanation clearly shows that the giving of a mortgage was not prohibited by the previous condition. But there are abundance of decisions which hold that the giving of a mortgage is not a sale, transfer, alienation, change, or conveyance of the property insured. *Jackson v. Ins. Co.*, 23 Pick., 418; *Allen v. Franklin Ins. Co.*, 9 How. Pr., 501; *Pollard v. Ins. Co.*, 42 Me., 221; *Washington Ins. Co. v. Hayes*, 17 Ohio St., 432; *Tomlinson v. Ins. Co.*, 47 Me., 232. Wood, in his work on Insurance, § 325, cites the case of *Edes v. Ins. Co.*, 3 Allen, 362, as an authority holding that the giving of a mortgage was a breach of a condition in a policy which rendered the policy void *"when the property shall be alienated by sale or otherwise,"* but upon examination of the case we find the condition under which the court held the giving of a mortgage avoided the policy was as follows: "When any property insured shall be alienated or *incumbered by sale, mortgage, assignment or otherwise*, the policy shall thereupon be void."

Arguing from analogy, it would seem to follow that a sale of real estate upon execution, which has the limited effect given to it by our laws in the way of conveying title, would not amount to an alienation, conveyance, sale, or change of title, within the meaning of the condition in the policy in question. We are not, however, without authority upon this specific question.

In *Strong v. Ins. Co.*, 10 Pick., 40, it was held that a sale of real estate upon execution, which left in the owner the right of redemption, was not a breach of a condition in the policy which provided, *"that if the property should be sold*

*or conveyed, in whole or in part, the policy should be void."* It is said in the head-note to this decision, that the court also held "that the provision in the policy referred only to a voluntary conveyance;" but we find no mention of that fact in the opinion delivered in the case.

In *Loy v. Ins. Co.*, 24 Minn., 315, it was held that, under a policy containing the exact language contained in the policy in this case, the giving of a mortgage by the holder of the policy on the property insured, and a sale made upon the mortgage by advertisement, which left a right of redemption in the policy-holder at the time of the loss, did not avoid the policy, and was not a breach of the condition. The court in this case state the rule adopted by all the courts in construing contracts of this kind, in the following clear and very plain manner:

"The question for consideration is, whether the foreclosure sale was a 'sale, transfer, or change of title' within the meaning of the foregoing condition, such as avoided the policy.

"In construing a condition of this character, if, upon consideration of the whole contract, it is uncertain whether the language of the stipulation is used in an enlarged or restricted sense, or if it is fairly open to two constructions, one of which will uphold and the other defeat the claim of the insured to the indemnity which it was his object in making the insurance to obtain, that should be adopted which is most favorable to the insured and most in harmony with such, the main purpose of the contract on his part. The reasons for this are twofold: The tendency of any such stipulation is to narrow the range and limit the force of the underwriter's principal obligation. It is also inserted by him for his own benefit, and in language of his own choice. If any doubt arises as to its meaning, the fault is his in not making use of more definite terms in which to express it. Hence the rule of strict construction against him, and the liberal one in favor of the assured, which prevail under such circumstances."

This case, we think, cannot be distinguished from the case at bar. It might be urged that there is a distinction between the case of executing a mortgage upon the premises under which no sale had been made, and the sale of real estate upon execution, so far as the two things affect what insurance men call the moral hazard. In the case of the mortgage before sale the insured would be personally liable to pay the mortgage debt, whether the mortgaged premises were burned or not; but after a sale upon execution, the personal liability to pay the debt to the amount bid on such sale is extinguished, and the purchaser takes the risk of the loss, if the property be destroyed by fire or otherwise before he becomes entitled to a conveyance of the title and possession under it. In the case last cited, the purchaser took the same risk after he purchased at the mortgage sale, and the personal liability of the assured was extinguished when the sale was made, although, as in the sale on execution, the right of redemption remained in the assured, as well as the title, until the time arrived when the purchaser was entitled to his deed.

In the following cases it is held that executory contracts for the sale of the insured property do not avoid the policy under similar conditions: *Phœnix Ins. Co. v. Lawrence*, 4 Metc. (Ky.), 9; *Masters v. Ins. Co.*, 11 Barb. (N. Y.), 624; *Clinton v. Ins. Co.*, 45 N. Y., 454; *Phillips v. Ins. Co.*, 10 Cush., 350; *Hill v. C. V. Mut. Protection Co.*, 59 Pa. St., 474; *Washington Fire Ins. Co. v. Kelly*, 32 Md., 421; *Jackson v. Ins. Co.*, 16 B. Mon. (Ky.), 242; *Power v. Ins. Co.*, 19 La., 28; *Hutchinson v. Wright*, 25 Beav., 444. The last case was a marine insurance, and before loss the assured transfe·red his interest to a third person by an absolute conveyance, and his vendee was entered as owner on the register; but upon the trial it was proved that the transfer was in fact a mortgage. The defendant insisted that the policy was avoided under two provisions of the association. The first was, that if *the ship was sold the risk should ·cease from the date of the sale, unless*

*notice was given to the secretary.* No notice of sale or mortgage either was given to the secretary. The other provision was, " that no vessel *which is mortgaged* shall be insured, unless the mortgagee give a written guaranty," etc. No such guaranty had been given. It was held that the plaintiff could recover, notwithstanding the form of his conveyance, upon proof that it was intended as a mortgage in fact; and, second, that the mortgage given after the insurance was not a violation of the second provision.

It seems to us that the words used in the condition in this policy clearly look to such a sale, transfer or alienation as passes the title and carries with it the right of possession. Such is the definition of the words " sold," " transferred," " alienated; " and, if they are made to include a sale upon execution, it is by giving them a meaning which they do not ordinarily receive. The added words, " change in the title or possession," do not extend the meaning. It is the title to the estate which is to be changed, not a mere right which may or may not ripen into a change of title. If the words " whether by legal process or judicial decree " were omitted, the condition would read: " If the property be sold or transferred, or any alienation or change takes place in the title or possession by voluntary transfer or conveyance." If that were the condition, it would be quite clear that the sale, transfer, alienation, or change of title would not include a mere agreement to sell, where the legal title still remained in the vendor, for the reason that such agreement would not be a transfer or conveyance of such property or the title, unless the possession were transferred in fact to the purchaser.

If the plaintiff had made a written agreement with his judgment creditor to convey the title to him in satisfaction of his debt, or any definite part thereof, such conveyance to be made one, two, or ten years after the date of the contract, unless within that time he paid the amount of the judgment, or such part of it as was agreed upon, with interest, the plaintiff to have

---

---

the right of possession, occupation and use of the premises in the mean time the same as if no such contract had been made, it seems to me that under all the authorities such agreement would not have been a breach of this condition. It would not have been a sale, transfer, alienation, or change of title or possession. It would simply be a contract to make a sale, transfer, alienation or change of title in the future, subject to a condition which would avoid the contract if complied with by the plaintiff. There would be no present change of title; and it seems clear that the words in the policy should be construed to mean a present change, and not a mere agreement for a change in the future. The contract above supposed is, in fact, the contract which the law makes for the parties upon an execution sale of real estate under the laws of this state.

We think the execution sale was not a breach of the condition in the policy.

*By the Court.*— The judgment of the circuit court is affirmed.